# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FANN CONTRACTING, INC., | Case No.: 2:17-cv-03126-GMN |
| Appellant, | **MEMORANDUM & OPINION** |
| vs. | Appeal from the United States Bankruptcy Court for the District of Nevada |
| GARMAN TURNER GORDON LLP, | |
| Appellee. | Bk No.: 15-14145-BTB |

Pending before the Court is the bankruptcy appeal of *Fann Contracting, Inc v. Garman Turner Gordon LLP*, Case No. 2:17-cv-03126. Appellant Fann Contracting, Inc. ("Appellant") filed an opening brief, (ECF No. 11).[1] Appellee Garman Turner Gordon LLP ("GTG") filed an answering brief, (ECF No. 13), to which Appellant replied, (ECF No. 21). For the reasons stated herein, the Court **VACATES** the underlying decision of the United States Bankruptcy Court for the District of Nevada.

## I.  BACKGROUND

The instant appeal centers upon the bankruptcy court's order granting a contingency award and expense award to GTG (the "Fee Award") over Appellant's objection. (Opening Br. at 1–2, ECF No. 11). Appellant is an unsecured creditor who performed construction work on certain real property (the "Frontier") that was the subject of a dispute between several parties in state court, as well as the Chapter 11 proceeding giving rise to the instant appeal. (*See* Mot. for Stay Relief at 942–45, Suppl. Excerpts of R. ("SER") Tab 37, ECF No. 15). Grand Canyon Ranch, LLC ("Debtor") filed a complaint against Appellant on August 14, 2013, asserting

---

[1] The Court denies Appellant's request for oral argument, (ECF Nos. 22, 23), as the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019.

contract and tort-based claims arising from Appellant's work on the Frontier. (*Id.* at 944).

On July 20, 2015, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Chapter 11 Voluntary Petition, Excerpts of R. Tab ("ER Tab") 1, ECF No. 12-1). On January 5, 2016, the bankruptcy court appointed Brian Shapiro (the "Trustee") as the Chapter 11 Trustee for the Debtor's Estate (the "Estate"). (*See* Order, ER Tab 3, ECF No. 12-3). On February 10, 2016, the Trustee filed an application to employ GTG as attorneys for the Trustee under 11 U.S.C. § 327(a) and for approval of a contingency-based fee agreement pursuant to 11 U.S.C. § 328(a) (the "Employment Application"). (*See* Employment Appl., Tab 4, ECF No. 12-4).

GTG agreed to represent the Trustee on a contingency fee basis under their agreement (the "Retention Agreement"), on the grounds that the Estate held "few in any assets, other than recovery actions," and held "no liquid assets." (*See* Retention Agreement at 340, Ex. 2 to ER Tab 15, ECF No. 12-15). Pursuant to the Retention Agreement, the Trustee and GTG agreed to a contingency fee of 35%, which would increase to 40% if a reorganization plan was reached, or 45% if the action continued until after the filing of a post-trial motion or a notice of appeal. (*Id.*).

The Employment Application provides that "[t]he contingent fee is calculated prior to the payment of expenses, and the fee will be calculated based on any sums recovered, held, or distributed by the estate, including the value of in-kind or non-monetary distributions." (*See* Employment Appl. at 47–48). The Employment Application further represented that GTG had already conducted an investigation of the matter and, accordingly, the Trustee requested that GTG be employed *nunc pro tunc* to the date of the Trustee's appointment. (*Id.* at 51–52).

On March 15, 2016, the bankruptcy court held a hearing on the Employment Application during which GTG represented to the court "[t]here are no assets, as you know, in this case." (*See* Hr'g Tr. at 54:18–19, ER Tab 5, ECF No. 12-5). On March 17, 2016, the bankruptcy

court approved the Employment Application. (*See* Employment Order, Ex. 1 to ER Tab 15, ECF No. 12-15). In the Employment Order, the bankruptcy court stated "[w]ith respect to fees, GTG will file a disclosure regarding its compensation which discloses the total amount GTG will be compensated under the Retention Agreement and the manner in which the fee was calculated, and describes the benefit GTG provided to the estate." (*Id.* at 336). The bankruptcy court further ordered that notice of the disclosure be provided to all creditors or parties-in-interest who would otherwise receive notice of a fee application under 11 U.S.C. § 330. (*Id.*).

On August 30, 2016, the Trustee filed its first proposed settlement ("First Settlement Motion") which contemplated a sale of the Frontier, over which various parties filed claims in state court ("Canyon Rock Parties"). (First Settlement Mot. at 60–61, ER Tab 6, ECF No. 12-6). In exchange, the Canyon Rock Parties would waive all claims to the Frontier and provide a $780,000 cash payment to the Estate, after which the Frontier would be sold to an entity of the Canyon Rock Parties' choosing free and clear of all encumbrances. (*Id.* at 61).

On April 24, 2017, the Trustee filed a second proposed settlement ("Second Settlement Motion") which would resolve claims between the Estate, Canyon Rock Parties, and an additional group of parties with adverse claims (the "Mared Parties"). (Second Settlement Mot., ER Tab 7, ECF No. 12-7). The Second Settlement Motion stated the Mared Parties would pay $1.75 million to the Estate in exchange for a transfer of the Frontier to the Mared Parties free and clear of all liens, claims, and encumbrances and all of the Estate's remaining assets, including any of the Estate's personal property located at the Frontier with the exception of, *inter alia*, the Estate's claims against Appellant. (*Id.* at 116–17). The Second Settlement Motion further provided that the Canyon Rock Parties' designee "will be deemed to have an allowed secured claim in the amount of $900,000." (*Id.* at 117).

On May 17, 2017, during a hearing, the bankruptcy court found the entirety of the Frontier was not part of the Estate's property because a prior quitclaim deed effectively

transferred a portion to Canyon Land Holdings, LLC ("Holdings"). (Hr'g Tr. 170:18–71:1, 191:19–25, 193:17–22, ER Tab 8, ECF No. 12-8). The bankruptcy court subsequently held a hearing on the Second Settlement Motion on June 8, 2017, at the conclusion of which, the court ordered supplemental briefing on how the northern parcel of the Frontier became part of the Estate's Property in the proposed settlement, as well as briefing on authority concerning the interplay between 11 U.S.C. § 363, governing sales of a debtor's property, and Federal Rule of Bankruptcy Procedure 9019, governing compromises and settlements in bankruptcy. (Hr'g Tr. at 251:1–8, ER Tab 9, ECF No. 12-9).

In its supplemental brief, the Trustee asserted that the Settlement "provides for the transfer of the Frontier free and clear of liens other than the Disputed Lease, the Settlement resolves more than $22 million of claims against the Estate, as well as two litigation proceedings." (Trustee's Suppl. Br. at 266:18–20, ER Tab 11, ECF No. 12-11). The Trustee's supplement further stated "the Estate only owns litigation claims. Without the Settlement, the Estate does not own any real property that can be auctioned." (*Id.* at 267:1–2). Appellant filed a supplement brief opposing the settlement arguing that the Settlement's terms have been inconsistent with respect to what extent the Estate owns portions of the Frontier and whether a § 363 sale was occurring or not. (Appellant's Suppl. Br. in Opp'n 274:14–276:4, ER Tab 12, ECF No. 12-12).

On August 23, 2017, the bankruptcy court approved the Second Settlement Motion. (Order, ER Tab 14, ECF No. 12-14). With respect to the dispute over the Frontier, the Court concluded "the Settlement satisfies Section 363(b), and Mared or its designee is a good faith purchaser of the Frontier and other personal property assets acquired through the Settlement." (*Id.* at 312:12–15).

On November 28, 2017, GTG filed an application ("Fee Notice and Application") requesting fees and expenses in the amount of $590,836.93, including a reduction of $50,000.

(Fee Notice & Appl. at 319:9–12, ER Tab 15, ECF No. 12-15). Appellant filed an objection on December 15, 2017, asserting that the Fee Notice and Application is procedurally improper, calculated pursuant to a misguided base computation, and based upon representations that render the fee award improvident. (Obj. at 359:12–60:2, ER Tab 16, ECF No. 12-16).

On December 19, 2017, the bankruptcy court held a hearing on the Fee Notice and Application during which it granted the Motion in its entirety and overruled Appellant's objection. (Order at 568:1–9, ER Tab 21, ECF No. 12-21). The order was docketed on December 22, 2017, (*see id.*), and Appellant filed its notice of appeal on December 27, 2017. (Notice of Appeal, ER Tab 22, ECF No. 12-22).

## II. **JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. § 158, which provides that "district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." 28 U.S.C. § 158(a).

## III. **STANDARD OF REVIEW**

The Court reviews *de novo* the bankruptcy court's conclusions of law, "including its interpretation of the Bankruptcy Code." *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). On appeal, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *E.g.*, *Cesar v. Charter Adjustments Corp.*, 519 B.R. 792, 795 (E.D. Cal. 2014). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Matter of Pizza of Haw., Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985).

## IV. DISCUSSION

Appellant raises three issues on appeal concerning the bankruptcy court's approval of the contingency fee award to GTG: (1) whether the bankruptcy court erred as a matter of fact and law in granting a payment of a contingency fees to GTG under 11 U.S.C. § 328(a); (2) whether GTG held a conflict of interest when structuring the settlement that favored GTG over unsecured creditors and whether contingency fees resulting from such conflict of interest should be reduced or eliminated; and (3) whether the Trustee's application to employ GTG negligently represented assets of the bankruptcy estate to the bankruptcy court, the U.S. Trustee, and creditors such that the contingency fees resulting from the application should be reduced. (Opening Br. at 1–2, ECF No. 11). Before turning to the merits, the Court will address GTG's threshold contention that Appellant failed to timely file a notice of appeal and, accordingly, the Court is without jurisdiction. (Opp'n Br. 18–20, ECF No. 13).

### A. Timeliness of Appellant's Notice of Appeal

"[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). "The untimely filing of a notice of appeal is jurisdictional." *In re Slimick*, 928 F.2d 304, 306 (9th Cir. 1990).

GTG argues that "the core of [Appellant's] arguments made in [Appellant's] Brief were raised in connection with the Final 9019 Motion and rejected through entry of the Settlement Order." (Opp'n Br. at 19). Therefore, according to GTG, because the substance of Appellant's argument is that "the transaction detailed in the Settlement Order was improper," and Appellant failed to file a notice of appeal within 14 days of the Settlement Order, the present appeal is untimely. (*Id.* at 18–20).

The issues Appellant raises implicate two bankruptcy court orders: the bankruptcy court's December 22, 2017 Fee Award, as well as the September 22, 2017 Settlement Order. Because Appellant's notice of appeal was filed on December 27, 2017, the instant appeal is

only timely to the extent it assigns error with respect to the Fee Award.[2] (*See* Notice of Appeal, ER Tab 22, ECF No. 12-22).

The first question on appeal—whether the bankruptcy court erred in granting a contingency award pursuant to 11 U.S.C. § 328(a)—squarely deals with the bankruptcy court's Fee Award. Therefore, the Court finds Appellant has timely raised this issue and the Court has jurisdiction to review the question presented.

The second issue and third issues on appeal pose a more difficult question. Appellant's second issue concerns whether "GTG held a conflict-of-interest when structuring the settlement . . . and whether contingency fees resulting from such conflict-of-interest should be reduced or eliminated." (Opening Br. at 1). The third issue on appeal is whether "the Trustee's application to employ attorneys negligently misrepresented asserts of the bankruptcy estate . . . such that contingency fees resulting from the application should be reduced." (*Id.* at 2).

The Court notes that Appellant makes numerous arguments that explicitly attack the structure and economics of the settlement in this case. (*See* Opening Br. 6–10, 11–12, 29–31, 33). To the extent Appellant assigns error with respect to the Settlement Order, the appeal is untimely and the Court is without jurisdiction to hear those issues. However, insofar as Appellant asserts that GTG's award should be reduced or eliminated in light of the alleged conflict of interest and negligent misrepresentation, the Court finds that these issues are properly before the Court. Accordingly, the Court now turns to the merits of Appellant's arguments.

---

[2] The Court finds, and the parties do not dispute, that the Fee Award and Settlement Order constitute final orders from which an appeal may lie. *See, e.g.*, *In re Slimick*, 928 F.2d at 307 n.1 ("[I]n bankruptcy, a complete act of adjudication need not end the entire case, but need only end any of the interim disputes from which appeal would lie.") (citing *In re White*, 727 F.2d 884, 885 (9th Cir. 1984)).

**B. Merits**

    **i. GTG's Fee Award**

First, Appellant argues that the bankruptcy court erred in granting the Fee Award by failing to conduct a reasonableness review pursuant to 11 U.S.C. § 330. (Opening Br. at 15–18). Appellant reasons that because the Retention Agreement was not unambiguously approved under § 328 of the Bankruptcy Code, the bankruptcy court was required to review the terms of the contingency award for reasonableness. (*Id.*). GTC responds that the bankruptcy court unambiguously approved the terms of the Retention Agreement and, accordingly, the bankruptcy court was foreclosed from conducting a § 330 reasonableness review. (Opp'n Br. at 21–22).

"Sections 328 and 330 establish a two-tiered system for judicial review and approval of the terms of a professional's retention." *In re First Magnus Fin. Corp.*, No. AZ-08-1160-PaDMo, 2009 WL 7809001, at *8 (B.A.P. 9th Cir. Feb. 24, 2009) (quoting *Rizer, Kanzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors* (*In re Smart World Tech., LLC*), 552 F.3d 228, 232 (2d Cir. 2009)). The inquiries required by these two provisions are mutually exclusive. *See In re B.U.M. Intern., Inc.*, 229 F.3d 824, 829 (9th Cir. 2000).

Section 328(a) permits a bankruptcy court to pre-approve, at the time of retention, the employment of an estate professional "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Where a bankruptcy court pre-approves a fee award under § 328, the court may not depart from the terms of the approved fee agreement unless the terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*

In contrast, under § 330, "the bankruptcy court reviews what services the professional provided, and decides, in retrospect, after considering all relevant factors, whether the

compensation requested by the professional is reasonable." *In re First Magnus Fin. Corp.*, 2009 WL 7809001, at *8 (citing *In re Garcia*, 335 B.R., 717, 723–250 (B.A.P. 9th Cir. 2005)). Pursuant to § 330, the bankruptcy court may award "reasonable compensation," which is determined by considering "the nature, the extent and the value of such services, taking into account all relevant factors," including the time spent by the professional, the rate of compensation, and the necessity of the services. § 330(a)(3); *see also* § 330(a)(4).

"Simply put, while § 330(a) requires it, § 328(a) severely limits the bankruptcy court's authority to conduct an after-the-fact "reasonableness analysis" concerning the value of a professional's services." *In re First Magnus Fin. Corp.*, at *8. To determine whether a professional is employed pursuant to § 328 or § 330, courts consider whether the "professional's retention application unambiguously specifies that it seeks approval under § 328." *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002). However, "a bankruptcy court is not compelled to accept a professional's employment under § 328 merely because the application cites that statutory provision." *Id.* at 671 n.2. Therefore, even if a retention application unambiguously invokes § 328, § 330 may still apply if the bankruptcy court "conditionally approv[ed] the professional's retention." *Id.*

Here, the Trustee's Employment Application explicitly invokes § 328 and makes clear that GTG sought pre-approval under this section. (*See* Employment Appl., Tab 4, ECF No. 12-4). The Court thus turns to whether the bankruptcy court conditionally approved the Employment Application such that § 330 applies, or unconditionally granted the Employment Application consistent with § 328.

On this point, two Ninth Circuit cases are instructive. In *In re B.U.M. Intern., Inc.*, the Ninth Circuit found that the bankruptcy court had only conditionally approved an employment application under § 328 because it was "clear from the record that the bankruptcy court intended to reserve for itself more than simply an 'improvident circumstances' review under 11

U.S.C. § 328." 229 F.3d at 830. Instead, the court stated that the bankruptcy court "intended to reserve the power to conduct an 11 U.S.C. § 330 'reasonableness and benefit to the estate' review." *Id.* Similarly in *Weintraub*, the Ninth Circuit held that the professional was employed pursuant to § 330 notwithstanding the order explicitly invoking § 328. *Weintraub v. Chicago Title Co. Priority Publ'g & Posting*, 9 F. App'x 643, 644 (9th Cir. 2001). The *Weintraub* Court reasoned that § 328 was inapplicable, in part, because "[a]lthough the Order refers to § 328, paragraph one of the Order requires application to the court pursuant to § 330 before any compensation is awarded." *Id.* Accordingly, in light of the ambiguity, the court concluded the bankruptcy court had "reserved the power to review fees under § 330." *Id.*

Here, the bankruptcy court's Employment Order, in relevant part, provides:

> The Trustee is hereby authorized to compensate [GTG] on a contingency fee basis pursuant to 11 U.S.C. § 328(a) subject to the following:
>
> a. GTG will file an application for approval of its costs consistent with Section 330.
>
> b. With respect to its fees, GTG will file a disclosure regarding its compensation which discloses the total amount GTG will be compensated under the Retention Agreement and the manner in which the fee was calculated, and describes the benefit GTG provided to the estate.
>
> c. Notice of the disclosure will [be] provided to the United States Trustee and all creditors or parties-in-interest who would otherwise receive notice of a fee application filed pursuant to 11 U.S.C. § 330 so that pursuant to 11 U.S.C. § 328(a), the Court, the United States Trustee, and other parties-in-interest will have an opportunity to seek allowance of compensation different than that provided under the Retention Agreement if the terms of the Retention Agreement prove to have been improvident in light of developments not capable of being anticipated at the time of the Retention Agreement.

(Employment Order 335:26–36:13).

The Court finds that this language suggests that the bankruptcy court conditionally approved GTG's employment. While the Employment Order's language begins with an explicit reference to § 328, the language that follows places conditions on the ultimate fee award. Subsection (a) provides GTG's award is "*subject to . . .* an application for approval of its costs consistent with Section 330." Subsection (b) states the award is subject to GTG providing *inter alia*, a "desc[ription of] the benefit GTG provided to the estate." These two provisions would be inconsistent with unconditional approval under § 328, which would limit the bankruptcy court's discretion to deviate from the pre-approved terms of retention absent "unforeseen circumstances." *See In re Merced Falls Ranch, LLC*, No. 11-19212-13-11, 2013 WL 3155448, at *3 (Bankr. E.D. Cal 2013). As in *In re B.U.M.* and *Weintraub*, these conditions imply that the bankruptcy court intended to reserve more than a mere improvident circumstances review under § 328.

In summary, the Court finds that the bankruptcy court's approval of GTG's Retention Agreement was ambiguous and conditional. Therefore, the Court holds that GTG was retained pursuant to § 330. On remand, the bankruptcy court may grant such fees as it deems appropriate pursuant to the standard set forth in § 330.[3]

### ii. Conflict of Interest

Next, Appellant asserts that the bankruptcy court erred by failing to consider whether GTG's Fee Award should be reduced in light of GTG's conflict of interest in structuring the settlement. (Opening Br. at 27). 11 U.S.C. § 327(a) provides that "a trustee may employ attorneys with court approval only if (1) they do not hold or represent an interest adverse to the

---

[3] Appellant makes numerous arguments in the alternative that if § 328 applies, improvident circumstances justify a modification of the fee award. (*See* Opening Br. at 18–27). Because the Court finds that the bankruptcy court granted the Employment Application pursuant to § 330, the Court need not reach Appellant's § 328 arguments. The Court notes, however, that Appellant may raise these arguments on remand to the extent they are not foreclosed by the Court's findings *infra*. *See* 11 U.S.C. § 330(a) (stating that a professional's award of "reasonable compensation" is subject to § 328).

estate, and (2) they are disinterested persons." *In re Tevis*, 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006). "The condition that an attorney not hold or represent an interest adverse to the estate and qualify as a disinterested person is a continuing one . . . ." *In re Private Asset Grp., Inc.*, 579 B.R. 534, 542 (Bankr. C.D. Cal. 2017). Therefore, a bankruptcy court is authorized to "deny allowance of compensation for services and reimbursement of expenses to any attorney who . . . acquires or represents an interest adverse to the estate . . . ." *Id.*

According to Appellant, GTG "held an adverse interest to the Estate" because its "fee directly reduced the amount of recovery to the Estate." (Opening Br. at 29). Appellant argues this conflict of interest unfavorably impacted GTG's "duty to ensure the Settlement resulted in optimal value to the Estate and its creditors." (*Id.* at 30). Appellant continues that as a result of "its adverse interest to the Estate, GTG failed to recommend that the Trustee obtain special counsel to review the structure of the Settlement and determine whether an alternative structure would provide more value to the Estate." (*Id.* at 31).

At the outset, the Court notes that Appellant does not specify the nature of GTG's alleged conflict of interest other than to point to the contingency fee arrangement, which does not, in and of itself, establish a conflict of interest.[4] Nor does Appellant point the Court to any authority suggesting that a contingency fee arrangement necessarily establishes a conflict. With respect to the authorities Appellant does cite, these cases are readily distinguishable as they involve attorneys who failed to disclose personal financial connections between the attorney and the debtor or trustee. *See, e.g.*, *In re Private Asset Grp., Inc.*, 579 B.R. at 543 ("The Court concludes that the Monson Firm is subject to disgorgement based upon its failure to disclose the existence of the personal loans made by Mr. Monson to [the chapter 7

---

[4] Retention of a professional under § 328 explicitly contemplates the use of contingency fee arrangements. *See* 11 U.S.C. § 328(a). Under § 330, contingency fee agreements are appropriate provided they meet the standards of reasonableness. 11 U.S.C. 330(a)(3); *see e.g.*, *In re B.U.M. Intern., Inc.*, 229 F.3d 824, 830–31 (9th Cir. 2000).

trustee].”); *In re CIC Inv. Corp.*, 175 B.R. 52, 56 (B.A.P. 9th Cir. 1994) (“[A] professional with a prepetition claim against the debtor cannot qualify as disinterested.”).

Here, in contrast, Appellant has not made any suggestion that GTG made personal loans to the Trustee, had a prepetition claim against the Debtor, failed to make disclosures concerning connections to the Estate, or otherwise carried any materially adverse interests to the Estate. Stated differently, Appellant has not identified an underlying conflict of interest from which the Court can infer that GTG held materially adverse interests to those of the Estate and its creditors. To the extent Appellant argues that GTG "had a duty to ensure the Settlement resulted in optimal value to the Estate and its creditors," (Opening Br. at 30),[5] Appellant is not foreclosed from asserting this in connection with the bankruptcy court's § 330 proceedings on remand. At this juncture, however, Appellant has not articulated a conflict of interest and, therefore, the bankruptcy court did not clearly err in finding the same.

### iii. Negligent Misrepresentation

The Court now turns to Appellant's third issue on appeal, which concerns whether the bankruptcy court erred by failing to consider whether the Trustee negligently misrepresented the Estate's assets when determining the Fee Award. (Opening Br. at 2). Appellant asserts that the Fee Notice and Application, Retention Agreement, and statements to the bankruptcy court "contained false information about the nature of the Estate's assets and the potential for recovery." (*Id.* at 33). GTG responds that no negligent misrepresentation took place as its Application accurately provided "the [Estate] contain[ed] no liquid assets with which to pay creditors or administrate expenses." (Opp'n Br. at 40). Further, GTG argues that its efforts to resolve the disputed claims as to the ownership of the Frontier among Debtor and various

---

[5] The Court notes that the cases Appellant cites for this proposition involve appeals of a settlement order and a § 363 sale order, neither of which have been timely appealed in this case. *See In re Woodson*, 839 F.2d 610, 620–21 (9th Cir. 1988); *In re Fitzgerald*, 428 B.R. 872, 882–84 (9th Cir. BAP Apr. 15, 2010). Because the Settlement Order in this case is final, Appellant may raise this issue on remand only insofar as it pertains to GTG's Fee Award.

creditors provided significant value to the Estate "by resolving such ownership in favor of the Estate." (*Id.* at 42).

Nevada courts recognize claims for negligent representation as set forth in the Second Restatement of Torts, which provides

> "One who, in the course of his business, profession or employment, or in any other [trans]action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Halcrow, Inc. v. Eight Jud. Dist. Ct.*, 302 P.3d 1148, 400 (Nev. 2013) (quoting Restatement (Second) of Torts § 552 (1977)). "Liability is only imposed on a party who has supplied false information, where that information is for the guidance of others and where the party knows that the information will be relied upon by a foreseeable class of persons." *Id.*

Preliminarily, the Court agrees with GTG that the much of the substance of Appellant's contention attacks the Settlement Order, which is not before the Court on appeal. For example, in Appellant's reply brief, Appellant purports to clarify its argument by asserting "once the Bankruptcy Court provided its ruling on ownership of the Northern Parcel, the Trustee and GTG should have structured the Settlement in a way that reflected Holdings' ownership and maximized the recovery for the Estate as opposed to structuring the Settlement in a way that artificially inflated their own fees." (Reply Br. 12–13, ECF No. 21). As the Settlement Order is not on appeal here, the Court declines to reach the issue of whether any alleged misrepresentations impacted the structure of the settlement.

To the extent Appellant seeks to narrow the issue to whether the Fee Award should be reduced in light of this alleged misrepresentation, the Court nonetheless finds that the bankruptcy court's finding was supported by the record did not constitute clear error. At a

hearing on GTG's Fee Notice and Application, GTG explained that "every single [Estate] asset was the subject of ongoing litigation at the time that we were employed[,]" and "ownership of the Frontier was heavily disputed," in the then-pending state court action. (Hr'g Tr. at 558:20–24, ER Tab 20, ECF No. 12-20). Moreover, the settlement agreement, by its terms, resolved ownership of the Frontier through a stipulation by which the Frontier would become part of the Estate. (Settlement Order 309:25–28, ER Tab 14, ECF No. 12-14). Because ownership of the Frontier was the subject of ongoing litigation, and given the settlement resolved this dispute in favor of the Estate, the bankruptcy court had a sound basis for concluding that there was no misrepresentation in GTG's averments that the Estate "contains no liquid assets with which to pay creditors or administrative expenses, but contains primarily litigation claims," and that the Estate "holds few if any assets, other than recovery actions, and holds no liquid assets." (Employment Order 51:21–23, ER Tab 4, ECF No. 12-4); (Retention Agreement at 916, Ex. 1 to SER 33, ECF No. 15). Accordingly, the bankruptcy court did not err in finding that GTG's asserted misrepresentations should not impact GTG's compensation award.

Based on the foregoing, the Court finds that the bankruptcy court did not clearly err in declining to find that GTG held a conflict of interest and negligently misrepresented the Estate's assets such that their award of compensation should be reduced or eliminated. The bankruptcy court did, however, err by not considering GTG's compensation award under 11 U.S.C. § 330. On remand, the bankruptcy court shall consider GTG's compensation pursuant to § 330 and award any fees and costs it deems reasonable under that standard.

///
///
///
///
///

## V. CONCLUSION

**IT IS HEREBY ORDERED** that the December 22, 2017 Order of the United States Bankruptcy Court for the District of Nevada is **VACATED**. The bankruptcy court on remand shall conduct a reasonableness review of GTG's compensation award pursuant to 11 U.S.C. § 330.

**IT IS FURTHER ORDERED** that Appellant's Requests for Oral Argument, (ECF Nos. 22, 23), are **DENIED**.

**DATED** this __27__ day of September, 2018

_____
Gloria M. Navarro, Chief Judge
United States District Court